1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Ronald Wesley Church,**<br>Petitioner<br>-vs-<br>**State of Arizona, et al.,**<br>Respondents | CV-08-1563-PHX-DGC (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Kingman, Arizona, filed a Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 31, 2008 (Doc.9).  On March 20, 2009, Respondents filed their Response (Doc. 27), and supplemented with a Motion to Expand the Record, filed September 28, 2009 (Doc. 53).   Petitioner filed a Reply on April 24, 2009 (Doc. 31).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

> Phoenix police officers finishing up an unrelated drug investigation at an area hotel observed Defendant, who was in the passenger seat of a parked vehicle, shaking and appearing very nervous. A woman walked

up to the driver and spoke for a few minutes, walked a few feet away, and returned to talk to the driver.

Police followed the vehicle as it exited the parking lot, and observed Defendant moving his arms underneath his seat. Police stopped the driver for speeding and arrested him on a traffic violation, and when Defendant was unable to produce identification, arrested him as well. Upon exiting the vehicle, Defendant threw a crumpled five dollar bill on the ground. In a search of the vehicle, police discovered underneath Defendant's seat a baggie of what appeared to be marijuana, and another baggie of a substance that appeared to be methamphetamine, both of which were later confirmed to be a usable amount of these illegal drugs. After the police read him his Miranda rights, Defendant told police the drugs were his, that he was addicted to methamphetamine, that he had purchased the drugs for himself and his girlfriend, and that he had been purchasing the drugs from the same female for two months. He told police he hid the drugs under his seat when he saw police following the vehicle. He said the five dollar bill was the change from the one hundred dollar bill he had given the female for purchase of the drugs.

(Exhibit U, Mem. Dec. at 2-3.)  (Exhibits to the Answer, Doc. 27, are referenced herein as "Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

On November 21, 2002, Petitioner was charged with counts of possession of dangerous drugs, possession of marijuana, and possession of paraphernalia.  (Exhibit A, Information.)  Petitioner was released from custody.  (Exhibit U, Mem. Dec. at 13.)   He moved for a competency screening, asserting a potential lack of competency both at the time of the offence and for purposes of trial. (Exhibit C, Motion.)   Based on the pre-screening, the evaluation was ordered by Hearing Officer Peterson (Exhibit D, Order 12/5/02), and two evaluators were appointed by Judge Vatz (Exhibit E, Order 1/13/03).  The reports were split, so Judge Vatz appointed a third evaluator.  (Exhibit F, Order 3/11/03.)   Eventually, Judge Vatz found Petitioner incompetent to stand trial, and ordered him committed to the Arizona State Hospital for purposes of restoring him to competency.  (Exhibit G, Order 5/6/3.)

Petitioner's  condition was reviewed by Judge Vatz some three months later, and his continued commitment was ordered.  (Exhibit H, Order 8/26/03.)   A few weeks later, however, Judge Vatz was advised that Petitioner had been restored to competency, and ordered him released.  (Exhibit I, M.E. 9/9/3.)  After a written stipulation to resolve the

matter on the basis of the written reports, Judge Vatz found Petitioner competent, directed him to continue his prescribed treatment, and set a pretrial conference.  (Exhibit J, Order 10/2/3.)  That Order provided:

> THE COURT FURTHER FINDS that the current medication regimen is necessary to ensure Defendant's ongoing competency.
> IT IS ORDERED that the Defendant shall take any and all medications as prescribed.
> IT IS ORDERED transferring this matter back to Judge Pro Tem Hamner for all further proceedings.

(*Id.* at 2.)

The matter was eventually assigned to Judge Cates, and at the pretrial conference, Judge Cates reviewed with Petitioner that, as charged, he faced a sentencing range of 6 to 15 years, and that the prosecution was offering a plea bargain to a single charge with one prior, which would permit sentencing below 2.25 years, and a maximum of 7.5 years.  Petitioner confirmed to the court that he had rejected that plea offer.  The court advised Petitioner that the trial would proceed the following Wednesday, and warned Petitioner that they would proceed even if Petitioner was not present.  (Exhibit L, R.T. 12/8/3.)[1]

Petitioner again appeared before Judge Cates on December 10, 2003.  Prior to the commencement of the hearing, defense counsel asked the judge for a bench conference. Though not transcribed, the conference was captured by the trial court's audio/video monitoring system.  (Doc. 65, Exhibit A, Exhibit 3, "09h00m28s.asf".)  In his Amended Declaration, based upon independent recollection and the video, Judge Cates, summarizes that bench conference as follows:

> During the aforementioned bench conference, Caroline Aeed informed me that: (1) Defendant had previously been through Rule 11 and had been ordered by his doctors to be on medication; (2) while on medication, Defendant "seemed fine"; and (3) although Defendant "appeared fine" earlier that morning, he had told her that he had failed to take his required medication that day.

(Doc. 98, Mot. Supp., Attachment, Amend. Decl. of Trial Judge at ¶ 2.)  Although the sound

---

[1] The trial court's audio/video monitoring system's recording of this hearing has been provided as an exhibit 2 to Defense Counsel Aeed's Affidavit.  (Doc. 65, Exhibit A, Exhibit 2.)

1   from the audio/video is at a very low level, the undersigned finds the following to be the

2   content of the conference:

3        MS. AEED: Uhm. I'm anticipating - - I'm anticipating a problem.
     Uh. My client came through Rule 11. He went to ASH. Uhm. During

4    the time and the doctor said he had to remain on medication. So she - -
     he's released from ASH.  He hasn't gotten any medication. This has

5    been a couple of months ago.  I direct him to Value Options.  I direct
     him to AHCCCS.  He goes.  Two weeks later he gets medication.  He's

6    fine. We stipulate to his competency because he's on medication. He's
     acting [garbled] this morning.[2]  So I ask him if he's been taking his

7    medication.  He says no.  So, uhm, I don't know if its substance abuse.
     I don't know what the problem is.  Ok. He's probably poor.  He

8    probably just hasn't been taking his medication, even though its free.
     I would at least like the Court to question him.  Uhm.  I think whether

9    or not he understands what's happening here today.  Because he told me
     that when I was making the argument on his trial management

10   conference that he just couldn't seem to definitely understand things.
     Which, you know, again I - - I don't  - -  I don't know what you - - how

11   I can make him take medicines.
         THE COURT: What kind of - -

12       MS. AEED: I apologize.
         THE COURT: What kind of mental problems - - what kind of

13   mental problems is he having?
         MS. AEED: Depression, panic and anxiety disorder. He should

14   be taking this - - I think it's called noctrexin [phonetic] and Paxil. He
     has hepatitis C so he's got like liver failure  and stuff like that.  So he

15   doesn't take it for some of those reasons. Uhm.
         THE COURT: Was he offered a deal in this case?

16       MS. AEED: Yes.  It was plead with a prior to the possession of
     dangerous drugs.  His uhm most current prior, I believe, was 99. It was

17   for possession of marijuana.   And the last was like 94 - -
         MR. GREEN [prosecution]: 94.

18       MS. AEED: But then most of them are in the 80's. So, he has
     two in this decade. Uhm - - Both class sixes.  But he has a total of the

19   four priors.
         THE COURT: Is it possible that he's under the influence of

20   drugs today?
         MS. AEED:  Maybe.  I don't - - I don't - - I don't really - - I just -

21   - I'm concerned ethically with proceeding and having this person come
     back and say that he never really understood what was going on.

22       THE COURT: Yeh.
         MS. AEED: Uhm and you know he - - he's been in Rule 11 and

23   he's been out. This is a guy, you know, who checked himself into the
     hospital himself [garbled] this whole time.  So, he checks himself into

24   the hospital, himself.
         THE COURT: Let - -  Let me talk to him and see what's going

25

26

27       [2] Trial counsel, in her affidavit, asserts the phrase is "...acting **fine** this morning."
     (Doc. 65, Exhibit A at 5.)  It is unclear to the undersigned whether the word is "fine" or,
     perhaps "funny."  The latter seems more in context with counsel's subsequent question of

28   Petitioner as to whether he was taking his medication.

on.
MS. AEED: Okay.

(Doc. 65, Exhibit A, Exhibit 3, "09h00m28s.asf" at 0:00 to 02:31.)

The undersigned finds that nowhere in this colloquy did counsel advise Judge Cates that Petitioner's competence was found to be conditioned upon his continued taking of the medication, nor that Petitioner had been ordered to take the medication. Trial counsel's affidavit simply indicates that she "informed the *Judge at the bench conference about the doctors requiring him to be on medication."* (Doc. 65, Exhibit A, Affidavit at 5.)  Similarly, Judge Cates describes the conference as informing him that Petitioner "had been ordered by his doctors to be on medication." (Doc. 98, Attachment, Amend. Decl. of Trial Judge at ¶ 2.)     The Court then opened the hearing by conducting a brief examination of Petitioner:

> THE COURT: Mr. Church, how you doing today?
> A   Okay
> THE COURT: How did you get here this morning?
> A   Somebody brought me.
> THE COURT: Do you know why we are here today?
> A   Um-hum.
> THE COURT: Why is that?
> A   For the court for possession of drugs.
> THE COURT: We're going to have a trial today.
> A   Yes.
> THE COURT: Have you ever been to trial before on other cases?
> A No.
> THE COURT: Do you know what a trial involves?
> A   Yes.
> THE COURT: What role do I play in the trial?
> A. You're the Judge.
> THE COURT: And who is that over here?
> A   Prosecutor.
> THE COURT: And the person seated to your left?
> A   My lawyer.

(Exhibit M, R.T. 12/10/03 at 4-5.)  The court again reviewed the plea offer and interrogated Petitioner on his understanding of the possible sentences at trial and under the plea.  (*Id.* at 5-8.)  In the course of doing so, the judge misspoke the maximum sentence as "5 years" rather than 15 years, and Petitioner apparently expressed some confusion:

> THE COURT: . . . In other words, if you are found guilty by the jury of everything that you've been charged with the best you can hope for is six years.  But could be as high as 5 years.  They offered you a plea agreement that - -

1        MS. AEED: If you don't understand, you need to tell the
judge.

2        A   Let me heart it again.

        THE COURT: If you are found guilty of everything
3    you've been charged with, the best you can do is 6 years, but could be
as bad as 15 years.

4

(*Id.* at 6-7.)

5

        The court then again *sua sponte* revisited Petitioner's mental condition:

6
        THE COURT: . . . Is today pretty stressful, you being here going
7    to a jury?
        A   No.  I mean, I mean, I don't know.  It's all right.  I can do it.
8    I can do it.
        THE COURT: Are you on medication today?
9        A   No.
        THE COURT: What is the mediation that you take that you're
10   supposed to take?
        A   I think it's called Paxil.  I don't know.
11       THE COURT: Does the Paxil, when you're on medication, help
you calm down a little bit?
12       A   Yeah.  But it makes me - - it has weird - - it messes you up
in other ways.  It made me sick.  Actually, it made - - how do I say?
13   Sorry.  But it's like you can't have sex on it.  Sorry, you can't.  I mean
it's like it's the weirdest thing.
14       THE COURT: You can't have what?
        MS. AEED [defense counsel]: Sex, Your Honor.
15       A   You can have it all day long, two days in a row, but you
never finish.  That's what they say.
16       MS. AEED: How did it make your mind feel?
        THE COURT: He said you can have it two days in a row.  Have
17   what two days in a row?
        A   Never mind, sorry, nothing.
18       THE COURT: Have the medication or sex two days in a row?
        MS. AEED: Sex two days in a row, is that what you meant?
19       A  Yes.
        THE COURT: Okay.
20       MR. GREEN [prosecutor]: Your Honor, I think what he's saying
it prevents him from having completed the sex.  That's why you can
21   have sex for two days.  That's the interpretation.
        THE COURT: I'll take your word for it.
22       MR. GREEN: Thanks, Judge.
        THE COURT: Do you feel that you're able to go through the
23   trial today?
        A  Um-hum.
24       THE COURT: Can you go through the trial today?
        A  Yeah.
25       THE COURT: Okay.  You understand what is going on?
        A Um-hum.
26       THE COURT: You can help your attorney.  Anything you want
to talk about?
27       MS. AEED: You told me out in the hall you didn't understand
what everyone was saying.
28       A  If you guys talk too long, it goes away.  It's like whatever

1   everybody is saying, I just play it off.  I hear what people are saying but
    no one really cares.
2                 I hear what you say, but then she'll say something and
    you will say something and it's like we are just starting over.
3                 THE COURT: It's a little bit too much to understand?
                  A   Too much?  Too much?  Yeah, if you talk slow.  I don't
4   know.
                  THE COURT: Does the medication help you understand better?
5                 A   No.
                  THE COURT: You're always like that?
6                 A   That's why I was getting in the trouble.  It's like I try - - I can
    remember the teachers say raise my hand.  I get in trouble because I
7   don't know.  It's like my brain - - I got a brain.  I think good but - -
                  THE COURT: So you've always having [SIC] this problem?
8                 A   Probably.
                  THE COURT: If we did the trial next week and not today, that's
9   not going to change anything, right?
                  A   I don't know.  I doubt it.
10                MS. AEED: Your Honor, I mean, when we first came back into
    Rule 11 after he was released from the hospital, he was like this.  I
11  asked the Judge for two weeks continuance so he could visit AHCCCS,
    get on the medication and then I did see a marked difference in him in
12  two weeks whether he believes that or not.  For the record, that's what
    I said on the record their [SIC].
13                THE COURT: Seems to understand things.  Would counsel
    approach one moment?
14
    (*Id.* at -11.)  An off-the-record discussion was then again held at the bench between Judge
15
    Cates and counsel, which was captured on the audio/video:
16
17                THE COURT: I take it that there's - - there's no way he's going
    to take a plea agreement?
18                MS. AEED: No.
                  THE COURT:   He just doesn't want to?
19                MS. AEED: Right.
                  THE COURT: Alright.  It doesn't make any difference what we
20  do today.  He's gonna be like this no matter what happens.
                  MS. AEED: Uhhum.  In a way I wish he was in custody because
21  if there's something additional that's affecting him [garbled] you know.
    I mean - - you know - - as - - as long as uhm - - the court I mean - - I
22  guess  - - is confident that we've made a record for him then
                  THE COURT: Yeah.
23                MS. AEED: Then I - -I - -  that's fine.  I'm completely prepared
    to go. I mean, I spent a long time doing it.  But at the same time I don't -
24  - I don't want  - - I want to do what's in his best interests.
                  THE COURT: I still - - I still don't understand this thing with the
25  sex.  You'll have to explain that to me later.
                  MS. AEED: I'll let Ryan [Green] do that.
26
    (Doc. 65, Exhibit A, Exhibit 3, "09h00m28s.asf" at 12:33 to 13:23.)
27
            Prior to the taking of testimony, Petitioner left the courtroom, did not reappear, and
28
    court proceeded without him.  (Exhibit M, R.T. 12/10/3 at 75.)  After a recess, trial counsel

raised the subject of a continuance:

> THE COURT: Do you know why your client's not here?
>
> MS. AEED: Your Honor, during some of the jury selection, he said he was having bad stomach problems.  He had to go to the bathroom immediately as an emergency.  So I know he's not feeling well.  I tried calling the cell phone number he has give me that I've been able to reach him, left a message, called him to be here at 1:20.  I don't know.
>
> Obviously it's more effective if he is here and I can confer and consult with him on the theories that might arise during testimony.  So I don't know how to get ahold of him and I don't quite - -
>
> THE COURT: Any explanation why he's not answering his phone?
>
> MS. AEED: No.
>
> THE COURT: Maybe he didn't want to talk to you.
>
> MS. AEED: No.  I mean, if he is sick, you know, maybe we should give him the option of, you know, recuperation and maybe continuing.
>
> THE COURT: We don't know if he is sick.
>
> MS. AEED: He did tell me he was sick but he did not say he was leaving because he was sick.  I'm anticipating that's one of the reasons.
>
> THE COURT: Well, he should be picking up his phone unless he is not physically able to do it.
>
> MS. AEED: Are you denying my request to continue the trial?
>
> THE COURT: Is that what you're asking?  Yes.
>
> MS. AEED: Okay.

(Exhibit M. R.T. 12/10/3 at 89-90.)

Petitioner was tried *in absentia* and was convicted on all three counts as charged.

A year later, on December 4, 2004, Petitioner was back in custody, and appeared for sentencing before Judge Cates.  (Exhibit O, R.T. 12/14/4.)    Petitioner explained his departure from trial:

> THE COURT: Mr. Church, is there anything that you want to tell me?
>
> THE DEFENDANT: I'm sorry for leaving.  I'm sorry for all - - I'm not a very bad person.  I didn't know - - I'm sorry.
>
> Also, I was not outside bragging about beating court or nothing.  I was outside hiding and praying to God that no one would ever come and find me.  I mean, how I messed up with my first batch of kids . . .
>
> THE COURT: Does he take medication for the mental health problems? What?
>
> THE DEFENDANT: Only whenever I get locked up, they give me medication.  And in prison they always give me it.  And then when all this started, they took me and put me in a hospital and put me on it and I got out and they wanted like 90 some dollars for the prescription so I didn't get it.  And I couldn't get it.  And so I didn't have it. And plus it was doing weird things to me.  And I didn't have it.
>
> And then I went to court and even though I - - everyone

said I was really good, like when I first got out and - - but then they said I went real crazy and it's like I don't know why.  It's like - - -
THE COURT: Is that because you were taking your medication?
THE DEFENDANT?  I guess. That's where they put me on it. It's sad to say but, yeah, I do all right in there, but I don't want to be in there.

(Exhibit O, R.T. 12/14/4 at 19-20.)

Petitioner was sentenced to the presumptive term of 10 years on the dangerous drug charge, and concurrent terms of 3.75 years on the other two counts.  (*Id.* at 21.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a Notice of Appeal (Exhibit Q), and counsel filed an Opening Brief (Exhibit R) arguing: (1)  that Petitioner's confession had been involuntary because the arresting officer testified that he had promised to release Petitioner in exchange for the confession; (2) evidence of Petitioner's prior drug usage and addiction was improperly admitted; and (3) Petitioner had improperly been denied credit on his sentence for time spent in the Arizona State Hospital.  The convictions and sentences were affirmed.  (Exhibit U, Mem. Dec. at 14.)

Petitioner filed a *pro se* Petition for Review with the Arizona Supreme Court arguing that he was unable to purchase his medications after release from the Arizona State Hospital, and was thus incompetent at the time of rejecting the plea agreement and trial.  Petitioner also argued that his confession was the result of threats.  (Exhibit V.)  That petition was summarily denied.  (Exhibit X, Order 4/12/07.)[3]

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

Following the denial of his direct appeal by the Arizona Court of Appeals, on January

---

[3]  Respondents do not assert, and the undersigned does not find, this rejection of Petitioner's competency claim to be a ruling on the merits. *See State v. White*, 194 Ariz. 344, 982 P.2d 819 (1999) (preclusion in Arizona Supreme Court by failure to raise below). Consequently, the undersigned does not find this to have any bearing on the merits of the subsidiary claim of incompetence contained within Petitioner's instant claim of  ineffective assistance.

31, 2007, Petitioner filed a Notice of Post-Conviction Relief (Exhibit Y).  Counsel was appointed.  (Exhibit Z, Order 2/12/7.)  Counsel filed a Notice of Completion (Exhibit AA), arguing inability to find an issue for review.  Counsel was ordered to remain in an advisory capacity, and Petitioner was granted leave to file a *pro per* Petition for Post-Conviction Relief. (Exhibit BB, order 9/7/7.)  Petitioner sent a letter to the court asserting various claims (Exhibit CC), but the Court advised Petitioner that all claims must be presented in his PCR Petition and that the claims in the letters would not be considered (Exhibit DD, M.E. 9/27/7).

On October 9, 2007, Petitioner filed a Petition for Post-Conviction Relief (Exhibit EE).  Petitioner argued that he was incompetent at the time of trial because he did not have his prescribed medication, and that trial counsel was ineffective for failing to insure that Petitioner was competent, and thus adequately informed on the plea offer.

The trial court noted that the petition failed to include a required certification, and granted Petitioner leave to filed the certification separately.  (Exhibit FF, M.E. 10/12/7.) Petitioner returned a certification on October 23, 2007 (Exhibit HH), but in the interim, on October 17, 2007 filed a new Petition for Post-Conviction Relief (Exhibit GG).

In that second petition, Petitioner argued: (1)  that his confession was coerced; (2) his right against self-incrimination was violated because he was incompetent at the time he was questioned by police; (3) ineffective assistance of counsel for failure to insure Petitioner was competent; (4) denial of his right to be competent at trial; (5) newly discovered evidence in the form of knowledge that he should not have been tried without having his medications; (6) failure of counsel to file a notice of appeal; and (7) violations under various rules and cases.

The trial court denied the petition, finding that with the exception of his ineffective assistance claim, Petitioner's claims were barred under Arizona Rule of Criminal Procedure 32.2(a) because they either were or should have been presented on direct appeal.  The court summarily rejected the ineffective assistance claim, concluding that Petitioner had failed to show "that counsel's representation fell below that of the prevailing objective standards." (Exhibit KK, Order 2/8/8 at 1-2.)  The PCR court found that Petitioner failed "to provide any

evidence to support his allegation that counsel was ineffective," and thus "failed to present a colorable claim for relief." (*Id.*)

Petitioner filed a petition for review (captioned "Request for Appeal") (Exhibit NN), and a Motion for Reconsideration (Exhibit OO).  The Arizona Court of Appeals denied the petition for review as untimely, noting that the trial court could review the matter and permit a late filing.  (Exhibit PP, Order 3/28/08.)

The trial court granted Petitioner an opportunity to file a motion for reconsideration (Exhibit QQ, Order 4/1/08.)  Petitioner filed his motion (Exhibit RR), which was denied, and an extension to file a petition for review was granted.  (Exhibit SS, Order 5/13/8.)

Petitioner then filed a new Petition for Review (Exhibit TT), arguing that counsel and the trial judge knew Petitioner was not taking his medication and was not competent at the time of rejecting the plea offer and at trial.   He specifically argued "The ineffective assistance of consel [SIC] see Strikland [SIC] V. Washington, 1984." (*Id.* at 9.)  The state did not respond to any claim of ineffective assistance.  (Exhibit UU, Response.)

That petition was summarily denied.  (Motion to Expand, Doc. 53, Exhibit A, Order 9/18/9.)


## E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the present proceeding by filing his original Petition (Doc. 1) on  August 22, 2008.  That original Petition was dismissed with leave to amend. (Order 9/10/8, Doc. 5.)  Petitioner filed a First Amended Petition (Doc. 7), which was also dismissed with leave to amend (Doc. 8).  On October 31, 2008, Petitioner filed his second amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 9) (hereinafter the "Petition").    Petitioner raised four grounds for relief: (1) Petitioner's trial counsel was ineffective; (2) Petitioner was not on medication and the officers who arrested him promised to release him; (3) police officers threatened Petitioner and scared him into admitting drugs belonged to him; and (4) criminal proceedings should not have been conducted against Petitioner while he was mentally incompetent. Grounds Two through Four

were dismissed for failure to state a federal claim, and an answer to Ground One was ordered.  (Order 11/21/08, Doc. 10.)

**Answer** - On March 20, 2008, Respondents filed their Answer (Doc. 27), conceding that the Petition is timely, but arguing that because state proceedings were then continuing on the claim in Ground One, it was unexhausted.  Respondents also argued that the claim is without merit.

**Reply** - On April 24, 2009, Petitioner filed his Reply (captioned "My Answering Breif [sic] Petition") (Doc. 31).  Petitioner's Reply simply points to his Petition.

**Supplement re Pending State Proceeding** - On September 28, 2009, Respondents supplemented the record with copies of the Arizona Court of Appeals' Order denying Petitioner's petition for review in his PCR proceeding.

**Supplements to the Record** - On March 3, 2010, the undersigned noted the apparent merits of Petitioner's claim of ineffective assistance of counsel given the order mandating Petitioner remain on medication as a condition of competency, and directed the parties to elicit a declaration of trial counsel and a certification of the trial judge pursuant to 28 U.S.C. § 2245 on the matter.

Respondents sought reconsideration (Doc. 61), arguing that Petitioner's failure to present a "colorable claim" to the PCR court meant that he had failed to develop a state court record and thus was not permitted under 28 U.S.C. § 2254 to an evidentiary hearing or to expand the record to include the suggested declarations.  That motion was denied.  (Order 4/28/10, Doc. 71.)  The undersigned opined that although the supplementation of the record had been requested to permit Respondents to rebut the facially valid claim, the limitations of 28 U.S.C. § 2254(e)(2) contained no explicit limitation based upon the presumed beneficiary of the supplemental evidence.  Nonetheless, the undersigned concluded that Petitioner had not failed to develop the record because his PCR petition adequately laid out a claim for ineffective assistance, the only precursor to an evidentiary hearing in the state court.  The parties were reminded of the 14 day deadline for objections.  No objections were filed.

In the meantime, on March 22, 2010, Respondents filed the trial judge's original Declaration/Certification (Doc. 64, Exhibit A), and on April 5, 2010, a "Notice" appending a "Response" from Counsel, dated March 31, 2010, as well as audio/video recordings of the trial proceedings, including various bench conferences. (Doc. 65).[4]

On February 23, 2011, Respondents moved to supplement the record with the "Amended" Declaration/Certification of the trial judge. (Doc. 98 and Attachment).

**Evidentiary Hearing** - Based upon the responses from trial counsel and the trial judge, the undersigned  set an evidentiary hearing and appointed counsel. (Order 9/21/10, Doc. 82.)

At a status conference on February 28, 2011, the parties reported that trial counsel had been deposed, and that no new testimony from her was expected at the hearing. Respondents urged that the hearing be vacated.  Counsel for Petitioner opposed vacating the hearing, but proposed no evidence to be presented at a hearing beyond Petitioner's testimony reasserting his claims, which could be presented by affidavit.  The evidentiary hearing was vacated and the parties were given an opportunity to file supplemental briefs and Petitioner's affidavit.

**Supplemental Answer** - On March 11, 2011, Respondents filed their Supplemental Answer (Doc. 102), attaching trial counsel's deposition (Exhibit A) and the exhibits to that deposition. Respondents argue that trial counsel's performance was not deficient because she "acted reasonably by bringing her concerns to the court's attention and by requesting the court question Petitioner to determine his level of competency."  (Doc. 102 at 15.) Respondents argue Petitioner has failed to show prejudice because the trial judge had questioned Petitioner and determined he was competent, and absent further showings would not have granted a continuance.  Respondents argue that Petitioner's self-serving statements are  insufficient evidence of Petitioner's failure to take his medications, or its impact on his

---

[4] Trial counsel's Response is not made under oath or on penalty of perjury.  Because it does not affect the outcome, the undersigned finds on the basis of counsel's duty of the candor to the court, and its presentation by Respondents, that the response serves the same evidentiary function as an affidavit of counsel.

1   competence.  Respondents further argue that Petitioner had denied any efficacy to the drugs,

2   and stopped them of his own accord.  Finally, Respondents argue Petitioner absconded, and

3   presents no objective evidence that this resulted from his lack of medication.

4          **Supplemental Reply** - On March 25, 2011, Petitioner filed, through counsel, his

5   Supplemental Reply (Doc. 104) and attached affidavit of Petitioner.  Petitioner argues there

6   were sufficient indicia of Petitioner's incompetence to give reasonable counsel cause to doubt

7   his competence, and there is a reasonable probability that he would have been found

8   incompetent had counsel effectively raised the matter.

9          In his Affidavit, Petitioner asserts he had not taken any medication since his release

10  from the Arizona State Hospital, and was using various narcotics, including

11  methamphetamine, and that he reported his lack of medication to counsel, but had not

12  advised her of his use of narcotics.

13

14                **III. APPLICATION OF LAW TO FACTS**

15  **A.  EXHAUSTION**

16         Respondents argue that Petitioner had not exhausted his state remedies on Ground

17  One because his petition for review to the Arizona Court of Appeals on his PCR petition was

18  still pending.  (Answer, Doc. 27 at 14, *et seq.*)

19         **Exhaustion Requirement** - Generally, a federal court has authority to review a state

20  prisoner's claims only if available state remedies have been exhausted.  *Duckworth v.*

21  *Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case

22  law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the

23  burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright*

24  *v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023

25  (1982).

26         **Exhaustion at Arizona Court of Appeals** - Respondents argued that Ground One

27  was unexhausted solely because Petitioner's PCR proceeding was ongoing before the

28  Arizona Court of Appeals.  (Answer, Doc. 27 at 18-19.)  That proceeding was completed on

1    September 18, 2009, when the Arizona Court of Appeals issued its summary denial of

2    Petitioner's Petition for Review.

3        Respondents argue that they should be permitted to supplement their answer if either

4    the Arizona Court of Appeals denied on procedural grounds, or Petitioner failed to seek

5    review by the Arizona Supreme Court.  Neither basis for supplementing applies.

6        **Procedural Bar** - If a state court disposes of a federal claim by applying a state

7    procedural bar that is independent of the merits of the federal claim, and adequate, the habeas

8    court must decline to address the merits of the federal claim. .  *See Coleman v. Thompson,*

9    501 U.S. 722, 729-732 (1991).  However, the Arizona Court of Appeals ultimately did not

10   deny on a procedural ground.  Rather, they issued a summary denial.  (Motion, Doc. 53,

11   Exhibit A, Order 9/18/9.)

12       This habeas court looks through that summary decision to the last reasoned decision,

13   in this case that of the trial court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).   The trial

14   court denied Petitioner's claim of ineffective assistance on the merits.  (Exhibit KK, Order

15   2/8/8.)  Thus, no procedural bar was applied.

16       **Presentation to Arizona Supreme Court** - Respondents also seek to assert an

17   argument that the Petitioner's claim is unexhausted by failure to seek review of his PCR

18   proceeding by the Arizona Supreme Court.  No party has shown that such review was sought,

19   and the undersigned presumes that it was not.  However, such review is not necessary to

20   exhaustion of Petitioner's state remedies.

21       Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first

22   raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-

23   conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir.

24   1994).   Only one of these avenues of relief must be exhausted before bringing a habeas

25   petition in federal court.   This is true even where alternative avenues of reviewing

26   constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211

27   (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

28   1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona

state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

Here, Petitioner was given neither a life sentence or the death penalty. However, Respondents argue (Answer, Doc. 27 at 15) that presentation to the Arizona Supreme Court (not just the Arizona Court of Appeals) is required for exhaustion, citing *Baldwin v. v. Reese,* 541 U.S. 27, 30–33 (1999). The Ninth Circuit's subsequent reliance on *Swoopes* in *Castillo*, notwithstanding *Baldwin*, dispels this argument. Moreover, nothing in *Baldwin* precludes the reasoning in *Swoopes*. Nor does the language cited by Respondents from *State v. Ikirt*, 160 Ariz. 113, 117, 770 P.2d 1159, 1163 (1989), which predated the Arizona Supreme Court's decision in *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (Ariz.1989), on which *Swoopes* is based.

Accordingly, with or without presentation to the Arizona Supreme Court, the undersigned finds Petitioner's state remedies on his claim properly exhausted.

## B.  MERITS OF INEFFECTIVE ASSISTANCE CLAIM

Petitioner asserts that trial counsel was ineffective for failing to insure that he was competent at the time that he rejected the plea offer and proceeded to trial. Petitioner argues that despite his release from the Arizona State Hospital, his ongoing competence depended upon him taking his prescribed medication, and that he did not have sufficient funds to purchase the medication, and thus had again become incompetent. He asserts that counsel was aware of this and failed to act to insure he was competent. (2nd Amend. Pet., Doc. 9 at 6.)

Respondents argue that this claim is without merit because: (1) any failure to comply with state statutes was irrelevant on federal habeas review; (2) counsel's performance  was not deficient despite Petitioner's lack of medication because counsel raised the concern but Petitioner was determined to be competent;(3) because Petitioner was deemed competent, and has not affirmatively shown he was incompetent, any effort to obtain a continuance

would have been unsuccessful; and (4) Petitioner  absconded.

Petitioner argues that there were sufficient indicia of Petitioner's incompetence to give reasonable counsel cause to doubt his competence, and there is a reasonable probability that he would have been found competent had counsel effectively raised the matter.

**1.  Limitations on Habeas Relief**

**Errors of Law** - While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24–25 (2002) (per curiam).  Rather, to justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Errors of Fact** - Further, federal courts may not grant habeas relief simply because they conclude that the state court got the facts wrong.  Rather, relief is limited to those cases where the state-court decision  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

**New Evidence** - Moreover, a state prisoner is not free to attempt to retry his claims in the federal courts with any modicum of new evidence.  There is a well established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."   Thus, "[s]tate-court fact-finding may be overturned based on new evidence presented for the first time in federal

1   court only if such new evidence amounts to clear and convincing proof that the state-court

2   finding is in error." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).

3          However, "[i]t is well-established that when the state courts do not make findings at

4   all, no presumption of correctness attaches, and we must make our own findings." *Taylor,*

5   366 F.3d at 1014.

6

7   **2.  Competence to Stand Trial**

8          Under both federal and state precedent, an Arizona defendant has a due process right

9   to not be tried when incompetent.  "If a defendant is incompetent, due process considerations

10  require suspension of the criminal trial until such time, if any, that the defendant regains the

11  capacity to participate in his defense and understand the proceedings against him." *Medina*

12  *v. California,* 505 U.S. 437, 448-449 (1992).  *See also* Ariz. R. Crim. P.  11.1 ("A person

13  shall not be tried, convicted, sentenced or punished for a public offense, except for

14  proceedings pursuant to A.R.S. § 36-3707(D), while, as a result of a mental illness, defect,

15  or disability, the person is unable to understand the proceedings against him or her or to assist

16  in his or her own defense.")

17         Where a defendant's competence has been shown to depend upon his continued use

18  of medication, information that he has not been taking the medication raises a reasonable

19  doubt as to his competence.  *See Miles v. Stainer*, 108 F.3d 1109 (9th Cir. 1997).

20

21  **3.  Standard for Ineffective Assistance**

22         Generally, claims of ineffective assistance of counsel are analyzed pursuant to

23  *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim,

24  Petitioner must show:  (1) deficient performance - counsel's representation fell below the

25  objective standard for reasonableness; and (2) prejudice - there is a reasonable probability

26  that, but for counsel's unprofessional errors, the result of the proceeding would have been

27  different. *Id.* at  687-88.  Although the petitioner must prove both elements, a court may

28  reject his claim upon finding either that counsel's performance was reasonable or that the

claimed error was not prejudicial.  *Id.* at 697.

A deficient performance is one in which counsel's errors were so great he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986).  An objective standard applies to proving such ineffectiveness, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent" representation. *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991)(quoting *Strickland*, 466 U.S. at 687-90).   The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The two-pronged test — deficient performance and prejudice — poses a mixed question of law and fact.  *Strickland,* 466 U.S. at 698; *Thompson v. Calderon*, 86 F.3d 1509, 1515 (9th Cir. 1996).  However, in a federal habeas corpus petition, state court findings of fact made while deciding an ineffective assistance of counsel claim are entitled to a presumption of correctness.  *Bonin v. Calderon*, 59 F.3d 815, 825 (9th Cir. 1995).

The two-pronged *Strickland* test applies equally to claims that counsel was ineffective with regard to defendant's competence to stand trial.   "Counsel's failure to move for a competency hearing violates the defendant's right to effective assistance of counsel when 'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.' "  *Stanley v. Cullen,* 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir.2001)).

**4.  Application to Petitioner's Claim**

**(a)  State Procedural Requirements**

In stating his claim of ineffective assistance, Petitioner asserts that the trial court failed to comply with various state rules. (Petition, Doc. 9 at 12-13.)  However, Petitioner makes no explicit argument that counsel was ineffective in regards to such failures, but only with

regard to his competency.  Accordingly, the undersigned construes these references to be part of Petitioner's claim that counsel was ineffective for failing to pursue the competency issue.

To the extent that Petitioner might intend to assert such failures to comply with state rules as separate claims, they are not cognizable in this federal habeas case.  A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States.  Federal habeas relief is not available for alleged errors in the interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991).

### (b)  State Court Decision

The last reasoned state decision on Petitioner's ineffective assistance claim, *see Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), was the trial court's all but summary decision. That court concluded that Petitioner "fails to demonstrate that counsel's representation fell below that of the prevailing objective standards."[5]  (Exhibit KK, Order 2/8/8 at 2.)  The trial court  made no specific findings of fact, but simply concluded that Petitioner failed "to provide any evidence to support his allegation that counsel was ineffective."  (Exhibit KK, Order 2/8/8 at 2.)

The state court's conclusion that Petitioner  failed to show deficient performance is a mixed question of law and fact.  Ordinarily, "we must apply the statutory presumption to the facts underlying the ineffective assistance of counsel claim."  *Mayfield v. Calderon,* 229 F.3d 895, 901 (9th Cir. 2000).  Here, however, the trial court made no factual findings, but rather simply issued its conclusion.   Thus, there are no factual findings to which a presumption of correctness under 28 U.S.C. § 2254(e)(1) may attach and thereby heighten

---

[5]  The trial court made no finding as to any prejudice.  However, although the defendant asserting ineffectiveness must prove both deficient performance and prejudice, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Strickland*, 466 U.S. at 697.

1   the bar of evidence required to reject the trial court's conclusions. *Taylor,* 366 F.3d at 1014.[6]

2

3       ### (c) Trial Judge's Declarations

4       In his original "Declaration/Certification of Trial Judge," dated March 19, 2010, Judge

5   Cates relates his limited recollection of the case, and review of the case materials.  Judge

6   Castes then declares:

7           5.      During the pendency of Maricopa County case
                    #CR2002-008038 a Superior Court Judge in Maricopa County
8                   had no involvement with Rule 11 proceedings, other than to
                    view the results of a Rule 11 ***pre-screen*** report in order to decide
9                   if a full Rule 11 evaluation was warranted. If a full evaluation
                    was ordered, that proceeding would have been conducted
10                  entirely by a Judge Pro Tern of the court (probably
                    Commissioner Benjamin Vatz). The professional reports and
11                  rulings in connection with the full Rule 11 evaluation would
                    then be placed in a sealed envelope, not revealed to the trial
12                  judge.  Therefore, I was not aware that Defendant's competency
                    was dependent upon his continued use of medication.

13
            6.      Had I been made aware that Defendant's competency was
14                  dependent upon his continued use of prescribed medication I
                    would not have proceeded to trial after learning that Defendant
15                  was not taking his prescribed medication.

16   (Doc. 64, Exhibit A at 1-2 (emphasis in original).)

17      Subsequently, on February 16, 2011, after reviewing the video recordings of the bench

18   conferences, Judge Cates issued an "Amended Declaration/Certification of Trial Judge. (Doc.

19   98, Attachment at 1.)  Although it is titled an "Amended" declaration, nothing in the

20   substance of the second declaration amends or contradicts the substance of the first.

21   Consequently, the undersigned considers this declaration to be supplementary to the first, and

22   thus considers both, and accords them equal weight.[7]

23      In the February 16, 2011 declaration, Judge Cates indicates his recall of a case in

24   _____

25      [6] Because the undersigned concludes that Petitioner's claim is without merit, "contrary
     to or unreasonable application of Federal law" limits on habeas relief are not reached.

26      [7] While the declaration of the trial judge is entitled to substantial deference, even if
27   the second declaration were amendatory rather than supplementary this Court would be
     required to consider both the original and amended declarations and weigh the credibility of
28   each.

which Petitioner's trial counsel "informed me that her client 'seemed fine' if he took his medication." (*Id.*) Judge Cates then connects that to the instant case, and summarizes the bench conference based on his review of the then supplied videos of the bench conferences:

> During the aforementioned bench conference, Caroline Aeed informed me that: (1) Defendant had previously been through Rule 11 and **had been ordered by his doctors to be on medication**; (2) while on medication, Defendant "seemed fine"; and (3) although Defendant "appeared fine" earlier that morning, he had told her that he had failed to take his required medication that day.

(*Id.* (emphasis added).) Judge Cates then recalls his colloquy attempting to determine whether Petitioner was competent:

> After a several minute discussion with Defendant, I concluded that he was aware of what was transpiring, and able to fully comprehend the proceedings and assist in his defense. In addition to Defendant's ability to fully understand and answer my questions, he was able to make observations that indicated to me that he was competent.

(*Id.*) He then states:

> After engaging Defendant in the colloquy, it was my determination that Defendant was both competent and capable of understanding the proceedings, and was thus able to participate in his defense.

(*Id.* at 2.) Judge Cates then concludes:

> Absent a subsequent showing by defense counsel establishing that Defendant had in fact failed to take his medication and that he was incompetent as a result, sufficient to overcome my personal observations of defendant's competency, I would have been inclined to deny any request for a continuance based on the allegation that defendant had not taken his required medication.

(*Id.*)

While the undersigned accords substantial weight to Judge Cates declarations on Petitioner's competence, the undersigned does not consider it conclusive, particularly given that Judge Cates was not aware of the mandatory nature of Petitioner's medications. *See U.S. v. Howard*, 381 F.3d 873, 881 (9th Cir. 2004) ("That the judge may have thought that Howard acted with intelligence and understanding at that hearing is insufficient to show conclusively that Howard's claim [of incompetence] lacks merit."). Further, it is true that competency findings are given great deference on habeas review. "The state trial and appellate courts' findings that the evidence did not require a competency hearing under *Pate*

are findings of fact to which [this court] must defer unless they are 'unreasonable' within the meaning of 28 U.S.C. § 2254(d)(2)." *Mendez v. Knowles,* 556 F.3d 757, 771 (9th Cir. 2009). However, Judge Cates made no finding on the record of Petitioner's competence.  He had no motion asserting Petitioner's incompetence before him, and his only on-the-record statement on the matter was that Petitioner "seems to understand things."  (Exhibit M, R.T. 12/10/03 at 11.)  That is not the equivalent of a finding that Petitioner was competent, which required not only a showing that he understood things, but also that he had "the capacity to participate in his defense." *Medina v. California*, 505 U.S. 437, 448-449 (1992). *See also* Ariz. R. Crim. P.  11.1 ("unable to understand the proceedings against him or her or to assist in his or her own defense.") While Judge Cates's recollections are certainly admissible in this habeas proceeding, 28 U.S.C. § 2245, such declarations are not a finding of fact on the record entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

If this Court were to deem Judge Cates's conclusion that Petitioner "seemed to understand things" to have been a competency determination, that would not fully resolve the matter at issue here, *i.e.* whether counsel provided ineffective assistance in pursuing the issue of Petitioner's competence.

In sum, the following appears from Judge Cates' declarations:

> (1) Although aware that Petitioner had been prescribed medications by his doctors from the Rule 11 proceeding, the judge was not made aware that the medications had been mandated as a condition of the competency finding.[8]

> (2) Counsel informed the judge that Petitioner "seemed fine" when taking his medications, but had not taken his medication for the day, and counsel led Judge Cates to believe Petitioner "appeared fine earlier that morning."

> (3) Based upon his colloquy with Petitioner, and without knowledge of the conditions of competency findings, Judge Cates concluded that Petitioner was

---

[8] This leaves open the possibility that the medications had been ordered by the doctors for purely therapeutic reasons, rather than as a precondition to the maintenance of his legal competence.

competent, but may have granted a continuance had counsel made a substantive showing that Petitioner had not taken his medication and was incompetent as a result.

### (d) Counsel's Perspective

The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances.[9]  *Kimmelman*, 477 U.S. at 381; *Strickland,* 466 U.S. at 689. Here, the trial court's record reflected that trial counsel was aware at the time of trial that:

1.    Petitioner suffered from mental disabilities which had previously rendered him incompetent to stand trial.   (Exhibit G, Order 5/9/03.)

2.    Petitioner had been prescribed and ordered to take medication to maintain his competency. (Exhibit J, Order 10/2/03 at 2 ("THE COURT FURTHER FINDS that the current medication regimen is necessary to ensure Defendant's ongoing competency.  IT IS ORDERED that the Defendant shall take any and all medications as prescribed.").)

3.    Petitioner's competency  benefitted from those medications.  Counsel stated:

> MS. AEED: Your Honor, I mean, when we first came back into Rule 11 after he was released from the hospital he was like this.  I asked the Judge for two weeks continuance so he could visit AHCCS, get on the medication and then I did see a marked difference in him in two weeks whether he believes that or not.  For the record, that's what I said on the record their [SIC].

(Exhibit L, R.T. 12/8/3 at 11.)  (*See also* Exhibit 98, Attachment, Cates Declaration at 1 ("Caroline Aeed, during a bench conference, informed me that her client 'seemed fine' if he took his medication."); and Doc. 65, Exhibit A, Exhibit 3, "09h00m28s.asf" Bench Conference Video (transcribed herein above); and Doc. 102, Exhibit A, Aeed

---

[9]  As discussed hereinafter, the undersigned ultimately concludes that Petitioner has failed to show prejudice.  Ordinarily, the undersigned would dispense with addressing the deficient performance.  Here, however, the prejudice question is debatable.  Consequently, the undersigned also addresses deficient performance.

1    Depos. at 27 ("...what I was trying to explain to the judge is whether my client likes

2    it or not - - ... [the medication] helps him").)

3    4.    Petitioner was not taking his medications at the time of trial.

4                    THE COURT: Are you on medication today?
                     A No.
5                    THE COURT: What is the medication that you take that
         you're supposed to take?
6                    A I think it's called Paxil. I don't know.

7    (*Id.* at 8.)  (*See* also Exhibit 98, Attachment, Cates Declaration at 1 ("although

8    Defendant 'appeared fine' earlier that morning, he had told [defense counsel] that he

9    had failed to take his required medication that day"; Doc. 102, Exhibit A, Aeed

10   Depos. at 22 ("I asked him, 'Did you take your medication?' He said, 'No.'".)

11   5.    Petitioner believed the medication calmed him down, but that it did not improve his

12   understanding, and he was ambivalent about whether delay would improve his

13   condition.

14                   THE COURT:    Does the Paxil, when you're on
         medication, help you calm down a little bit?
15                   A Yeah. But it makes me - - it has weird - - it messes
         you up in other ways. It made me sick. Actually, it made - - how do I
16       say? Sorry. But it's like you can't have sex on it. . . .
                     * * *
17                   THE COURT: Does the medication hel p you understand
         better?
18                   A No.
                     THE COURT:  You're always like this?
19                   A That's why I was getting in the trouble. It's like I try
         - - I can remember the teachers say raise my hand. I get in trouble
20       because I don't know. It's like my brain - - I got a brain. I think good
         but - -
21                   THE COURT: So you've always having [SIC] this
         problem?
22                   A Probably.
                     THE COURT:   If we did the trial next week and not
23       today, that's not going to change anything, right?
                     A I don't know. I doubt it.
24
         (*Id.* at 8-11.)
25
     6.    Petitioner understood the general nature of the proceedings, but was having difficulty
26
     following extended discussions.
27
                     THE COURT: Mr. Church, how you doing today?
28                   A  Okay.

                                      - 25 -

THE COURT: How did you get here this morning?

A  Somebody brought me.

THE COURT: Do you know why you are here today?

A  Um-hum.

THE COURT: Why is that?

A  For the court for possession of drugs.

THE COURT: We're going to have a trial today.

A  Yes.

THE COURT:   Have you ever been to trial before on other cases?

A  No.

THE COURT: Do you know what a trial involves?

A  Yes.

THE COURT: What role do I play in the trials?

A  You're the judge.

THE COURT: And who is that over here?

A  Prosecutor.

THE COURT: And the person seated to your left?

A  My lawyer.

\* \* \*

THE COURT: Do you feel that you're able to go through the trial today?

A  Um-hum.

THE COURT: Can you go through the trial today?

A  Yeah.

THE COURT: Okay.  You understand what is going on?

A  Um-hum.

THE COURT: You can help your attorney.  Anything you want to talk about?

MS. AEED [defense counsel]: You told me out in the hall you didn't understand what everyone was saying.

A  If you guys talk too long, it goes away.  It's like whatever everybody is saying, I just play it off.  I hear what people are saying but on one really cares.

And I hear what you say, but then she'll say something and you will say something and it's like we are just starting over.

THE COURT: It's a little bit too much to understand?

A  Too much?  Too much?  Yeah, if you talk slow.  I don't know.

(*Id.* at 4-10.)

For example, Petitioner was having difficulty comprehending the plea offer

and applicable sentencing ranges.

THE COURT: He's charged, Counsel, with a Class 4, Class 6 and Class 6 with two priors?

MR. GREEN [prosecutor]: That's correct, Your Honor.

THE COURT: On a Class 4 with two priors, the range of sentencing is a minimum of 6 and maximum of 15 and he's got to go to prison.

MR. GREEN: That's correct.

THE COURT: Do you understand that, Mr. Church?  Is

1    that a surprise to you?

         A   No, sir.

2        THE COURT: If you are convicted of everything they charged you with, you've got to go to prison and its going to be a minimum of six years.  That's if I think you're a real swell fellow.

3        A   Um-hum.

4        THE COURT: Okay?  Do you know what the plea offer -- do you know what the plea offer was that the State offered you?  Do you now think they offered you some kind of a deal?

5        A   No.

6        THE COURT: What was the plea offer the State offered?

         MR. GREEN: Your Honor, the plea offer was plead to the charge with a prior, open range.  And at the trial management conference, I explained it wasn't my intention to recommend anything above the presumptive term.

7

8        THE COURT: So instead of a minimum being 6, could be 2 1/4.  He still has to go to prison?

9        MR. GREEN: That's correct, Your Honor.

10       THE COURT: You understand that they offered you a possibility of anywhere from 2 1/4 to a minimum instead of a 6 minimum, if you don't understand, let me know.

11

12           In other words, if you are found guilty by the jury of everything that you've been charged with the best you can hope for is six years.  But could be as high as 5 [SIC] years.  They offered you a plea agreement that - -

13

14       MS. AEED: If you don't understand, you need to tell the judge.

15       A   Let me hear it again.

16       THE COURT: If you are found guilty of everything you've been charged with, the best you can do is 6 years, but could be as bad as 15 years. So anywhere from 6 to 15 years if you are found guilty of everything they charged you with.

17           But they've offered you a plea agreement where instead of it being a minimum of 6, it could be a minimum of 2 1/4 years, and the maximum is 7 1/2 instead of 15 1/2 years. So it's almost, well, the maximum is half what you could get if you are found guilty of everything.

18

19

20           Do you understand that or do you have questions about that?

21           Let me do this. Let me write this down so you can see it.  It's a lot easier to see sometimes.

22       A   I know what he's talking about.

         THE COURT: Carolyn?

23       MS. AEED: Yes.

         THE COURT: Let me do this. Do you see the numbers up at the top, Mr. Church? I put down there 6, 10 and 15.

24       A   Yeah.

25       THE COURT: Okay. The 6 is the minimum. The 15 is the maximum and the 10 is what is called the presumptive, kind of in the middle. Underneath that there's a line that says 2 1/4, 4 1/2, and then 7 1/2.  Are those the numbers I have down there?

26

27       MS. AEED: Yes.

         THE COURT: And that's the range of sentencing that the State has offered in a plea agreement. Do you understand these things?

28

- 27 -

1
       A  Yeah.

2
       THE COURT: Okay. No matter what, if you are found
guilty, you have to go to prison. If you take the plea, you've got to go
to prison. The only way you can avoid prison is to go through a jury

3
trial and the jury find that you're not guilty, okay, or you're guilty of
something less than they charged you with. Is today pretty stressful,

4
you being here going to a jury?
       A  No.  I mean, I don't know.  It's all right.  I can do it.

5
I can do it.

6
  (*Id.* at 5-8.)

7
7.  Petitioner's affect was sufficiently different at the time of trial to cause counsel to

8
  question whether he was taking medication, and to raise the issue to the trial court.

9
       Q.  At some point, I guess, I gather from your interactions with
the Court he tells you, oh, by the way - -

10
       A.  No, he doesn't' tell me.  I ask him.
       Q.  Okay.  So you asked him - -

11
       A.  Because he's being arg - -
       * * *

12
       Q.  You interact with him.  You ask.  He tells you I'm on the
medication or not on the medication.  He indicates that you what?

13
       A.  I asked him, "Did you take your medications?" He said,
"No."

14
       Q.  What made you ask that?
       A.  Because he was argumentative with me.

15
       * * *
       Q.  Did you inquire with him further about what no meant?

16
       A.  No.
       Q.  Okay. So what do you do?

17
       A.  Let's see.  The first thing I do is . . . I go up to the judge and
I ask for a bench conference.

18
  (Doc. 102, Exhibit A, Aeed Depos. at 22-23.)

19

20
  To be sure, trial counsel now asserts she held the belief that Petitioner was competent.

21
(Doc. 65, Exhibit A, Trial Counsel's Declaration at 7.)  However, counsel's conclusions are

22
not determinative.  To the contrary, counsel is obligated to act any time there are "sufficient

23
indicia of incompetence to give objectively reasonable counsel reason to doubt the

24
defendant's competency."  *Stanley,* 633 F.3d at 862 (9th Cir. 2011).  The fact that counsel did

25
act, by broaching the subject at the bench conference, shows that such indicia were present,

26
as does her knowledge that Petitioner's competency had been found dependent upon his

27
taking the medication.

28

1    **(e) Counsel's Conduct**

2        Under the foregoing circumstances, the undersigned finds that reasonable counsel

3    would have alerted the trial court to the conditional nature of the competency determination

4    and the judicial mandate for medication, and either moved for a continuance to allow

5    Petitioner to be medicated, or moved for a formal competency determination.

6        **Failure to Argue Conditional Competency and Mandate for Medications** -

7    Respondents argue that trial counsel "reasonably presumed that the trial court had apprised

8    itself of a prior court minute entry providing that Petitioner's competency was dependent on

9    his continued use of medication."  (Supp. Answer, Doc. 102 at 15, n.3 (citing Aeed Depos.

10   at 36-37.)  However, neither Respondents nor trial counsel explain why that would be a

11   reasonable presumption.  Trial counsel simply espouses it as her belief:

12           Q.  Okay.  Did anybody, Judge Cates, Ryan Green, or anybody,
         to your recollection reference this order when you were discussing the
13       motion to continue - - when I say "this order," this would be Exhibit 1
         that we're using today - - the fact he had to be on the medication in
14       order to remain competent?
             A.  I felt I did at the bench conference.
15           Q.  Okay.  But nobody sort of pulled it out and said, hey, let me
         see what's in that order or somebody waived it around or any of that
16       sort of thing?
             A.  I truly believed it was in the court file and that the judge
17       could see it.
             Q.  Okay.
18           A.  I truly believed that.
             Q.  Let me back you up a second there relative to that.  Judge
19       Vatz, V-a-t-z - - I guess he's in a different courtroom - - issues this
         order.  It goes into the electronic whatever and eventually somehow
20       appears in the court file.
             Did you have or was it practice to have some sort of
21       status conference discussion with the actual trial judge about the rest - -
         do you call it restoration, what needed to happen to maintain that the
22       client was restored?  I mean, did you have some sort of status
         conference to kind of fill the Court in on, hey, you know, he's got
23       multiple personality disorder and we need to keep him on these
         medications or that just didn't happen?
24           A.  That never even happened, no.  It doesn't happen, no.
                                * * *
25           THE WITNESS:  In my opinion there was absolutely a
         presumption that the trial court would be aware of what was in the file
26       as far as the order goes. So yes.
                                * * *
27           Q.  But as far as you know in this case, there was no such
         status conference because it doesn't happen?
28           A.  No.

1  (Doc. 102, Exhibit A, Aeed Depos. at 36-38.)

2          There were substantial reasons for counsel to not make such a presumption.  The trial

3  judge was not the same judge who had conducted Petitioner's competency proceeding.

4  Rather, the matter had been transferred to the "Rule 11 Commissioner's Court" for that

5  purpose.  (*See* Exhibit D, Order 12/5/2.)  It was Judge Pro Tem Vatz who had received and

6  reviewed Petitioner's mental health exams, found Petitioner incompetent, ordered his

7  restoration treatment, (Exhibit G, Order 5/6/03), received his status reports, (Exhibit H, Order

8  8/26/03), ordered him released (Exhibit I, M.E. 9/9/3), determined him competent, found

9  continued medication necessary to that competency, and  ordered Defendant to remain on

10  that medication (Exhibit J, Order 10/2/3).  In contrast, it was Judge Cates who was presiding

11  over Petitioner's trial.

12          Judge Cates' declarations reference no knowledge that Petitioner's competency had

13  been judicially determined to depend upon his medication.  In his original Declaration, Judge

14  Cates observes:

15          During the pendency of Maricopa County case #CR2002-008038 a
        Superior Court Judge in Maricopa County had no involvement with
16          Rule 11 proceedings, other than to view the results of a Rule 11
        prescreen report in order to decide if a full Rule 11 evaluation was
17          warranted. If a full evaluation was ordered, that proceeding would have
        been conducted entirely by a Judge Pro Tern of the court (probably
18          Commissioner Benjamin Vatz). The professional reports and rulings in
        connection with the full Rule 11 evaluation would then be placed in a
19          sealed envelope, not revealed to the trial judge. Therefore, I was not
        aware that Defendant's competency was dependent upon his continued
20          use of medication.

21  (Doc. 64, Exhibit A, Decl. of Trial Judge at 1-2.)  It is true that the trial court's docket reflects

22  the filing of all the Rule 11 proceedings in the criminal file.  (Exhibit XX, Docket at 8-9.)

23  And trial counsel opines in her deposition that the minute entry would not have been sealed.

24  (Doc. 102, Exhibit A, Aeed Depos. at 14.)  However, Judge Cates' declaration states:

25          Even if the minute entry order dated 10/2/2003 titled "Redetermination
        of Competency After Restoration A.R.S. Section 4510(B)" was not
26          sealed and was in open view in the court file, I would have considered
        it a routine minute entry that I would not have read.

27  (Doc. 64, Exhibit A, Decl. of Trial Judge at 2, n.1.)

28

1    In his Amended Declaration, Judge Cates simply references Petitioner having "been

2    ordered *by his doctors* to be on medication."  (Doc. 98, Attachment, Declaration at 1, ¶ 2.)

3    Similarly, trial counsel's own response to this Court only proffers that she informed the trial

4    judge "about the doctors requiring him to be on medication."  (Doc. 65, Exhibit A at 5.)  In

5    her deposition, the best counsel could offer was that during the bench conference "I'm not

6    sure if I said Vatz or the doctor said he had to be on medications."  (Doc. 102, Exhibit A,

7    Aeed Depos. at 25.)  As noted herein above, the undersigned has found from the audio/video

8    recordings that counsel simply argued "the doctor said he had to remain on medication."

9    In sum, trial counsel failed to argue to the trial court the most significant fact at her

10   disposal to either obtain a continuance or a determination of incompetence: that the

11   medication Petitioner had not taken was the medication which the physicians and Rule 11

12   judge had determined were a condition to his competence.

13   **Failure to Move for a Continuance** - Counsel failed to seek a continuance based

14   upon the competency issue.  Counsel's only motion for a continuance was after Petitioner had

15   absconded, and was based solely on Petitioner's purported physical illness.  (Exhibit M, R.T.

16   12/10/3 at 75, 89-90.)

17               THE COURT: Do you know why your client's not here?
                 MS. AEED: Your Honor, during some of the jury

18   selection, he said he was having bad stomach problems.  He had to go
     the bathroom immediately as an emergency.  So I know he's not feeling

19   well.
                 * * *

20               THE COURT: We don't know if he is sick.
                 MS. AEED: He did tell me he was sick but he did not say

21   he was leaving because he was sick.  I'm anticipating that's one of the
     reasons.

22               THE COURT: Well, he should be picking up his phone
     unless he is not physically able to do it.

23               MS. AEED: Are you denying my request to continue the
     trial?

24               THE COURT: Is that what you're asking?  Yes.

25   (*Id.* at 89-90.)  Counsel made no mention of Petitioner's potential incompetence in seeking

26   this continuance, and had not previously sough a continuance on the basis of the lack of

27   medication:

28               Q. ...You did not move to continue the trial at that point based

on the fact he wasn't on his medication, correct?

    A.  I - - I did not say those words, no.  I did say, "If the Court is confident that he can proceed this way or after your questioning, then I'm okay with that, Judge."

(Doc. 102, Exhibit A, Aeed Depos. at 31.)

> [T]he motion for a continuance did not clearly suggest that petitioner's competence to stand trial was the question sought to be resolved. While we have expressed doubt that the right to further inquiry upon the question can be waived, it is nevertheless true that judges must depend to some extent on counsel to bring issues into focus. Petitioner's somewhat inartfully drawn motion for a continuance probably fell short of appropriate assistance to the trial court in that regard.

*Drope v. Missouri,* 420 U.S. 162, 177-178 (1975).

**<u>Failure to Ask for a Competency Redetermination</u>** - Moreover, counsel failed to move for a competency re-determination.  At best, counsel alerted the trial court that Petitioner had not taken prescribed psychiatric medication, and left it wholly up to the judge to pursue the matter.  Respondents argue that counsel had "acted reasonably by bringing her concerns to the court's attention." (Answer Doc. 27 at 31.)  However, counsel is not relieved of responsibility for insuring a client's competency to stand trial by simply expressing concern to the court about their competence. She was not simply an uninterested bystander who fulfilled her duty by suggesting that Petitioner's competency was questionable.  Rather, she was responsible for advocating for Petitioner and insuring that he did not proceed to trial while incompetent.

> . . . defense counsel has a responsibility for the correct determination of the competency issue that he does not have with respect to other issues. . . .Although it is the court's responsibility to determine the issue of competency, counsel has the obligation, flowing from his duty to protect his client's rights, to see that the issue is decided correctly.

*Bishop v. Superior Court, In and For Pima County,*  150 Ariz. 404, 408, 724 P.2d 23, 27 (1986) (quoting Pizzi, *Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems,* 45 U. Chi. L. Rev. 21, 58 (1977)).[10] Indeed, when it comes to

---

[10]  While federal law governs the effectiveness of counsel for purposes of this habeas proceeding, state law is relevant to ascertaining the obligations of reasonable counsel in a state court proceeding.

competency to stand trial, "the defense lawyer is often the most cogent witness." *Id.* at 409, 724 P.2d at 28.  And, the mere fact that counsel does not assert his client's incompetence can be relied upon by the court as evidence of competence. *See U.S. v. Clark*, 617 F.2d 180, 186, n. 11 (9th Cir. 1980) ("The fact that his attorney apparently considered him competent is significant evidence that he was competent.").

Even if trial counsel could simply raise the issue without argument (e.g. because in candor to the court she did not believe Petitioner was incompetent at the time), she failed to alert the trial court to the most critical fact, *i.e.* that Petitioner's ongoing competence had been medically and judicially deemed dependent upon his taking his prescribed medication.

Respondents argue that the counsel exercised reasonable professional judgment to proceed despite her misgivings based upon: (1) the trial court's belief that Petitioner understood the proceedings; and (2) Petitioner's on-the-record representation that he was unlikely to benefit from a continuance. (*Id.*)  Neither rationale is convincing.

It is true that at the end of the trial court's questioning, and prior to an off-the-record discussion, the court made a comment on its impressions:

> THE COURT: Seems to understand things.  Would Counsel approach one moment?

(Exhibit L, R.T. 12/8/3 at 11.)  However, that certainly did not rise to a decision by the court precluding an effort to insure Petitioner's competence.[11]  Indeed, Judge Cates' Declaration reflects that he would have considered a continuance based upon the lack of medication if supported by "a subsequent showing by defense counsel establishing that Defendant had in fact failed to take his medication and that he was incompetent as a result."  (Doc. 98, Attachment, Amend. Decl. at 2, ¶ 7.)  It is just such a showing that Petitioner contends should have been mounted.

Nor is it persuasive that Petitioner was himself ambivalent about the medication.

---

[11]   It appears doubtful whether, under Arizona law, the trial court could implicitly overrule the prior orders finding medication necessary to Petitioner's competency. *See State v. Berger*, 171 Ariz. 117, 828 P.2d 1258 (App. 1992) (trial court can not implicitly find restored an incompetent defendant simply by proceeding to trial).

1   Petitioner's opinions might be relevant if counsel's own experience had not shown that
2   Petitioner's mental condition was markedly better with medication, and his behavior
3   questionable on the day of trial.  Even then, this was not a case involving a defendant who
4   might otherwise be presumed to have been competent, with or without his medications, such
5   that his responses to questions by the trial court could be relied upon to establish his
6   competency.  Rather, counsel knew Petitioner's competency had, just  some two months
7   before, been judicially declared to depend on his continued medication.[12]

8        The problems with relying upon a defendant's own determinations of his competence
9   have been recognized by the Arizona Courts.  "The right to a determination of competency
10  to stand trial cannot be waived for the obvious reason that until he is found competent, a
11  defendant cannot make a knowing waiver."  *State v. Ferguson,*  26 Ariz. App. 285, 287, 547
12  P.2d 1085, 1087 (Ariz. App. 1976).  *See also Pate v. Robinson,*  383 U.S. 375, 384 (1966)
13  ("But it is contradictory to argue that a defendant may be incompetent, and yet knowingly
14  or intelligently 'waive' his right to have the court determine his capacity to stand trial.") It
15  has also been recognized by the Federal courts:  "It is equally contradictory to argue that a
16  defendant who may be incompetent should be presumed to possess sufficient intelligence that
17  he will be able to adduce evidence of his incompetency which might otherwise be within his
18  grasp."  *U.S. v. DiGilio,*   538 F.2d 972, 988 (3rd Cir. 1976).

19       Counsel's reliance upon Petitioner's self-evaluation is further undermined by her belief
20  that Petitioner was engaging in substance abuse at the time of trial.

21

22       **(f) Tactical Reasons** - Tactical decisions with which a defendant disagrees cannot
23  form the basis for a claim of ineffective assistance of counsel. *Morris v. California*, 966 F.2d
24  448, 456 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992).. "Mere criticism of a tactic or

25  _____

26      [12]   The problems with relying upon a defendant's own determinations of his
27  competence have also been recognized by the Arizona Courts. "The right to a determination
    of competency to stand trial cannot be waived for the obvious reason that until he is found
28  competent, a defendant cannot make a knowing waiver." *State v. Ferguson,*  26 Ariz.App.
    285, 287, 547 P.2d 1085, 1087 (Ariz.App. 1976).

strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave*

*v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).   Further, the reviewing court need not

determine the actual reason for an attorney's actions, as long as the act falls within the range

of reasonable representation.    *Morris*, 966 F.2d at 456-457.

Respondents note that trial counsel was concerned that pressing the issue might have

resulted in Petitioner being incarcerated, either to enforce the medication order or as a result

of her (apparently accurate) suspicions of Petitioner's drug use. (Supplemental Answer, Doc.

102 at 15, n. 3.)

> Q.  And now you stated earlier that you had some concerns
> regarding informing the judge in detail about, you know, Mr. Church's
> failure to take the medication.  Would you be able to explain that a little
> more?
> A.  Well, it was my feeling that morning that if I pointed out to
> Judge Cates that my client was defying a court order that I would be
> relaying information that would harm him, and knowing Judge Cates,
> he often put people - - just took them right into custody right there.  He
> drug tested them on the spot if he didn't belief them.  I had repeatedly
> told Mr. Church he could go into custody.

(Doc. 102, Exhibit A, Aeed Depos. at 41-42.)

That justification is unpersuasive for two reasons.

First, counsel had herself suggested such courses of action to the trial court.  ".  So,

uhm,  I don't know if its substance abuse.  I don't know what the problem is."  (Doc. 65,

Exhibit A, Exhibit 3, "09h00m28s.asf" at 0:00 *et seq.*) "In a way I wish he was in custody

because if there's something additional that's affecting him..."  (Doc. 65, Exhibit A, Exhibit

3, "09h00m28s.asf" at 12:33 *et seq.*)  .

Second, the potential for pretrial incarceration is not a reasonable tactical reason to

allow an incompetent defendant to proceed to trial. Competence at trial must be of paramount

concern. "A defendant who is not competent cannot be tried. The defendant, prosecution and

the court all have a duty to see that this does not occur." *State v. Starcevich,* 139 Ariz. 378,

389, 678 P.2d 959, 970 (Ariz.App.1983). "Therefore, the defendant's lawyer is not only

allowed to raise the competency issue, but, because of the importance of the prohibition on

trying those who cannot understand proceedings against them, she has a professional duty

to do so when appropriate." *U.S. v. Boigegrain,* 155 F.3d 1181, 1188 (10th Cir. 1998)

Reasonable defense counsel would never make a unilateral determination that it is better for their client to be tried while incompetent, regardless of the potential pitfalls of raising the issue. Doing so would be outside counsel's authority and a violation of their duties to the court.

The undersigned finds no reasonable strategic choice in counsel's failures.

For the foregoing reasons, the undersigned would find that counsel's conduct fell below the objective standard of the prevailing professional norm.

That is not to suggest that counsel was entirely derelict in her duties to Petitioner. Her Response to the Court reflects that she had worked to make sure Petitioner had access to his medication, and that he was aware of the risk of incarceration if he failed to do so. (Doc. 65, Exhibit A, Aeed Response at 4.) At the critical moment of trial, however, counsel's advocacy faltered.

**(g) Prejudice** - To show ineffective assistance, Petitioner must not only show deficient performance, but also prejudice to a reasonable degree of probability. In the context of a failure to pursue a competency matter, the question is not the ultimate outcome at trial, but whether the Petitioner would have been required to proceed to trial. *Stanley*, 633 F.3d at 862.[13]

Moreover, Petitioner is not required to show what a particular judge would have done in the face of an adequate performance by counsel. "The assessment of prejudice ...should not depend on the idiosyncracies of the particular decision-maker, such as unusual

---

[13]   Consequently, the fact that Petitioner absconded is irrelevant. Had his incompetence been shown, or a delay obtained, there would have been no trial from which he could be absent. Moreover, if Petitioner were incompetent to proceed to trial, his absence at trial could not have been deemed a voluntary absconding, any more than a defendant suddenly taken ill could be deemed to have absconded. *See* Ariz. R. Crim. Proc. 9.1 (trial in absentia permitted by defendant "voluntarily absenting himself"). *Cf. State v. Reed*, 196, Ariz. 37, 992 P.2d 1132 (App. 1999) (absence voluntary even though the result of suicide attempt where though defendant was depressed he was not incompetent).

propensities toward harshness or leniency." *Strickland*, 466 U.S. at 695.  Rather, Petitioner must show that a reasonable jurist, acting "according to law," *id.* at 694, would not have required Petitioner to proceed to trial.

For the following reasons, the undersigned concludes that there is not a reasonable probability that, had counsel adequately argued the matter, Petitioner would not have been required to proceed to trial[14]:

1.    Judge Cates' first declaration, if taken alone, might call for a finding of prejudice:

> Had I been made aware that Defendant's competency was dependent upon his continued use of prescribed medication I would not have proceeded to trial after learning that Defendant was not taking his prescribed medication.

(Doc. 64, Exhibit A at 2.)

However, Judge Cates' second declaration, made after a more thorough review of the record,  indicates he was satisfied that Petitioner was competent. It is true that the second declaration reflects that his determination was not made with the benefit of either: (a) a showing that the medication had been judicially or medically determined to be a condition of competency as opposed to merely therapeutic; (b) a showing that Petitioner had actually not taken his medication; or (c) a specific showing of the length of time Petitioner had not been medicated.  However, Petitioner has not in this proceeding offered any evidence, beyond his own declaration, to establish the latter two items.

2.    The evidence is undisputed that Petitioner had not taken his medication at least on the day of trial.

3.    The weight of the evidence is that Petitioner had not been taking his medication for some time.

It is true that Judge Cates' declaration suggests that the bench conferences

---

[14]    The undersigned is cognizant that the parties have not provided and the undersigned has not reviewed Petitioner's psychiatric records.  The undersigned implies from the parties' failure to produce them herein and the result of the related proceedings, that the records would neither bolster nor diminish Petitioner's claims.

reflected a failure to take medication for just one day.  (*See* Doc. 98, Exhibit A, Cates Decl. at 1, ¶ 2 ("he had failed to take his required medication that day")  It is also true that trial counsel asserts she "made a record regarding the statement he hadn't taken his meds that day." (Doc. 65, Exhibit A at 7.) And in her deposition she asserts she advised the trial court "he didn't take his medication today." However, trial counsel's contemporaneous advice to the trial court did not reflect that it was a single day's dosage, and suggested more:

> So I ask him if he's been taking his medication.  He says no.  So, uhm, I don't know if its substance abuse.  I don't know what the problem is.  Ok. He's probably poor.  He probably just hasn't been taking his medication, even though its free.

(Doc. 65, Exhibit A, Exhibit 3, "09h00m28s.asf" at 0:00 *et seq.*)

It is also true that trial counsel asserts "[t]o my knowledge, he was medicated from September 2003 until the day of trial."  (Doc. 65, Exhibit A at 4.) However, it is unclear whether this is intended as an affirmative assertion, or a denial of contrary knowledge. Her deposition testimony was that she did not attempt to clarify what Petitioner meant when he responded that he hadn't taken his medication.  (Doc. 98, Exh. A, Aeed Depos. at 22-23.)

Finally, it is true that Petitioner's recent affidavit and his testimony at sentencing assert he had not taken the medication since his release. (Doc. 104, Supp. Reply, Exhibit, Church Affid.; Exhibit O, R.T. 12/14/4 at 20.)  However, trial counsel had represented to the trial court and in this proceeding that she had assisted Petitioner in obtaining his medication after his release.  (Doc. 65, Exhibit A, Exhibit 3, "09h00m28s.asf" at 0:00 *et seq.*)

Of course, the ultimate issue is not whether Petitioner had his medication, whether he had taken it, nor even the length of time he had not been taking it.  The relevant issue is whether, had counsel performed appropriately, Petitioner would have been deemed incompetent, and/or the trial continued.

4.      Petitioner has not offered anything beyond his own declaration, and whatever

1    presumption might arise from the conditional competency order, to establish that he

2    was incompetent.   Judge Cates points out Petitioner's objection to the judge's

3    recitation of the possible sentences. (Doc. 98, Attachment, Decl. at 1-2.)  Indeed,

4    Petitioner was coherent enough to divine the incongruity in Judge Cates' erroneous

5    advice that he was facing a minimum of six and maximum of five years in prison.

6    (Exhibit M, R.T. 12/10/03 at 6-7.)

7           It is true that the protested disability was the inability to maintain a train of

8    thought over the course of a conversation, rather than the ability to identify logical

9    lapses in a discrete statement.  (*Id.* at 10.)  However, Petitioner has presented nothing

10   other than his assertions and general troubles with competency, to establish such a

11   disability.

12   5.   Judge Cates was aware of the pre-existing and then recent determination by the

13   psychiatrists and Judge Vatz that Petitioner was incompetent, and at least the

14   psychiatrists' determination that he required medication (though not that it was a

15   condition to competency) .  "[E]vidence of a defendant's irrational behavior, his

16   demeanor at trial, and any prior medical opinion on competence to stand trial are all

17   relevant in determining whether further inquiry is required, but that even one of these

18   factors standing alone may, in some circumstances, be sufficient." *Drope v. Missouri,*

19   420 U.S. 162, 180 (1975).

20          It is true that an order mandating medications to restore competency to stand

21   trial must be founded upon significant showings of necessity.  *See Sell v. U.S.*, 539

22   U.S. 166 (2003) ("the Constitution permits the Government involuntarily to

23   administer antipsychotic drugs to a mentally ill defendant facing serious criminal

24   charges in order to render that defendant competent to stand trial, but only if the

25   treatment is medically appropriate, is substantially unlikely to have side effects that

26   may undermine the fairness of the trial, and, taking account of less intrusive

27   alternatives, is necessary significantly to further important governmental trial-related

28   interests.").

Here, however, Judge Cates had the benefit of a first hand evaluation of Petitioner the day of trial, and concluded that Petitioner was able to proceed. The undersigned's own review of the record indicates that at trial Petitioner demonstrated no obvious signs of incompetence other than his own protestations of difficulty in following protracted discussions.

Thus, notwithstanding the conditional competency order and Petitioner's lack of medication, Petitioner has failed to meet his burden of showing that a reasonable trial judge, following the law, would have halted the proceedings had counsel adequately pursued the matter.

**(h) Conclusions re Merits of Claim** - Based upon the foregoing, the undersigned concludes that trial counsel performed deficiently by failing to alert the trial court to the conditional nature of the competency order and the mandate for medication, and failing to either move for a continuance to allow Petitioner to be medicated, or to move for a competency re-determination.  However, the undersigned also concludes that Petitioner has failed to establish that he was prejudiced by counsel's deficiencies by showing to a reasonable degree of probability  that but for such deficiencies he would not have been required to proceed to trial.

# IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being  resolved adversely to Petitioner.  Accordingly, a decision on a

certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, jurists of reason would find it debatable whether the Petition states a valid claim of the denial of a constitutional right .

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition,  a certificate of appealability should be issued.


## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 31, 2008 (Doc.9) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be **ISSUED**.

1

## VI. EFFECT OF RECOMMENDATION

2          This recommendation is not an order that is immediately appealable to the Ninth

3   Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

4   *Appellate Procedure*, should not be filed until entry of the district court's judgment.

5          However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

6   have fourteen (14) days from the date of service of a copy of this recommendation within

7   which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing

8   Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to

9   file a response to the objections.  Failure to timely file objections to any factual or legal

10  determinations of the Magistrate Judge will be considered a waiver of a party's right to *de*

11  *novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

12  Cir. 2003)(*en banc*).

13

14  DATED: September 6, 2011                    _____

15                                                          JAY R. IRWIN
                                                          United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28